Shanley N. Egeth, J.
Plaintiff has commenced this action to recover the sum of $2,500 from the defendant bank, claiming that defendant wrongfully paid a check drawn against his account after receiving a proper and timely stop payment order.
FACTS PROVEN ON TRIAL
The following material facts have been proven upon trial:
On December 8, 1973, plaintiff entered into agreement to *286 purchase two rugs from one Ralph Gallo for a price of $10,500. A $2,500 deposit was given by delivery of a postdated check, No. 221, dated December 10, 1973, and drawn upon plaintiff’s account at the defendant bank’s 140 Broadway, New York City branch. Plaintiff agreed to pay the balance of the purchase price, to wit: $8,000, by December 30, 1973, and took the smaller rug home that day. At opening, on December 10, 1973, plaintiff went to the branch of defendant bank where his account was maintained, spoke to an officer, Kenneth Hurley, with whom he had prior business relations, and directed that payment be stopped upon the subject check. All required information was correctly given (except the check was described as No. 222 rather than No. 221, the correct number), and a stop payment memo was issued by the bank. On the afternoon of the next day, December 11, 1973, the check was presented for payment at the very same branch, and it was cashed. Thereafter, plaintiff’s account was debited the $2,500 paid on the check. The same day, without knowledge that the check had been cashed, plaintiff telephoned Gallo, told him the contract was rescinded, and asked him to pick up his rug. Two or three days later, the rug was picked up at plaintiff’s apartment. Plaintiff had no knowledge that the check had been cashed until he received his January bank statement. He called Gallo demanding return of the $2,500. The request was refused with an indication that Gallo might seek to enforce the purchase agreement. The defendant bank rejected plaintiff’s request to restore the $2,500 to his account. At present plaintiff has no rug in his possession nor does he have his $2,500.
During his cross-examination, plaintiff acknowledged the accuracy of the following question and answer in the transcript of his pretrial deposition: "Q. Mr. Thomas, from what you have told us, I believe you testified that you breached your agreement with Mr. Gallo, based upon information which Mr. Meli had given you, is that true?” "A. This is essentially correct.” This question and answer was admitted into evidence over objection solely for impeachment or potential impeachment purposes. It was not received as evidence in chief proving plaintiff’s breach of the Gallo purchase agreement. This court does not consider this question which calls for a legal conclusion from a lay witness to be any probative proof of the fact of such breach, or proof of nonloss.
*287 PROPRIETY OF STOP ORDER AND PAYMENT
Subdivision. (1) of section 4-403 of the Uniform Commercial Code explicitly provides: "A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in Section 4-303.”
It is undisputed that a detailed direction was given to the defendant to stop payment on the check in question (except for a single digit mistake on the check number), the order was confirmed in writing early in the morning, and the subject check was paid at the very same branch in the afternoon of the following day. Under these circumstances, I find that adequate notice and a reasonable opportunity was given to the bank, and that it must be held accountable for its act in making payment of the check in contravention of the stop payment order. (Tusso v Security Nat. Bank, 76 Mise 2d 12 [where bank held responsible for certification one hour and 40 minutes after stop order]; accord Siniscalchi v Valley Bank of New York, 79 Mise 2d 64.) A day and one-half is more than reasonable notice to enforce a stop order on a check presented at the very same branch, and payment of the item by the bank thereafter constitutes a breach of its obligations to honor the stop order. The normal problem of reasonable computer lag when dealing with a great number of other branches of a large bank has no relevancy to the facts at bar, where all transactions occurred in a single branch. The single digital mistake in describing the check in the stop order is deemed trivial, and insignificant. Enough information was supplied to the bank to reasonably provide it with sufficient information to comply with the stop payment order. The bank is therefore held responsible for its act of improperly making payment upon the check.
bank’s contentions
Defendant bank has virtually rested on plaintiff’s case, in that no affirmative defense has been asserted or proved and no real evidence has been adduced by said defendant. The defendant contends that plaintiff has failed to prove a prima facie case in that no evidence was introduced in his case to negate the ultimate right of the payee of the stopped check to
*288 retain the proceeds thereof, or to exclude any right of set off based upon the value of the rug returned to Gallo.
LEGAL ISSUE RAISED
The bank’s trial strategy and its contentions raise legal questions not thus far clearly judicially determined under the Uniform Commercial Code as to the minimal requisites of a prima facie case in an action by a customer against his bank which failed to comply with a timely stop payment order. This issue appears to be complicated by apparent ambiguities and inconsistencies within and between subdivisions (1) and (3) of section 4-403 and section 4-407 of the Uniform Commercial Code. (1954 Report of NY Law Rev Comm, pp 320, 444-445; 1955 Report, pp 1238, 1555, 1560; 1956 Report, p 44.)
PRECODE LAW
Prior to the enactment of the code, the case law was clear that a plaintiff customer was not required to prove any actual loss as part of his prima facie case against a bank which failed to comply with a timely stop payment order. He merely had to adduce facts proving wrongful payment over a proper stop order, and the amount taken from the account plus an absence of ratification by plaintiff (American Defense Soc. v Sherman Nat. Bank of N. Y., 225 NY 506; Chase Manhattan Bank v Battat, 297 NY 185). The defendant however was not precluded from proving in such action that plaintiff sustained no loss and thereby was being unjustly enriched as a means of defeating recovery (American Defense Soc. v Sherman, supra), but plaintiff was not compelled to litigate against a third party (payee) against his will as a precondition to the right to assert such an action against a malfeasant bank (Chase Manhattan Bank v Battat, supra).
QUESTIONS CREATED BY CODE PROVISIONS
In attempting to codify the prior case law and make some changes, the current provisions of the Uniform Commercial Code create ambiguity, inconsistency, conflict and confusion. As a result no clear cut judicial determination has yet been made to harmonize the provisions, the statutory design and the realities of the practical commercial world.
The burden imposed upon the customer by subdivision (3) of section 4-403 of the Uniform Commercial Code to establish the *289 fact and amount of loss, which in literal terms might compel him to litigate the merits of his position in the underlying transaction between himself and the payee prior to seeking enforcement of his rights against the bank, would appear to be inconsistent with the overall policy expressed in subdivision (1) of this section of the code that the depositor’s right to stop payment is a service to which he is entitled without regard to any inconvenience or occasional loss to the bank, and such right need not be predicated on proof of sound legal grounds (Official Comment, McKinney’s Cons Laws of NY, Book 62½, Uniform Commercial Code, § 4-403, p 611; Sunshine v Bankers Trust Co., 34 NY2d 404, 413 [n 5]).
Furthermore, while in concept the thrust of the intent of subdivision (3) of section 4-403 and section 4-407 of the Uniform Commercial Code may appear to be consistent, there is a fundamental conflict on burden of proof. Whenever a bank debits its customer’s account having improperly paid over a valid stop payment order, a question can arise as to whether the depositor sustained a real loss. This issue can arise by reason of the fact that the customer’s liability on the item continues because the payee is a holder in due course or because the payee or holder has certain contractual rights on the underlying transaction which the bank can assert as a set off to the claim of the customer. The conflict between these two provisions is whether the customer must establish as part of his prima facie case that he has a good defense against the payee or holder or whether the bank must prove the absence of true loss on the part of the customer by way of defense or counterclaim in the action. (1954 Report of NY Law Rev Comm, pp 320, 444-445.)
POSTCODE DECISIONS
Two postcode cases shed light upon the problem of what constitutes a prima facie case in an action such as the one at bar. In Cicci v Lincoln Nat. Bank & Trust Co. of Cent. N. Y. (46 Misc 2d 465) a Judge in the City Court of Syracuse had to deal" with the problem without the benefit of the Court of Appeals 1974 opinion in Sunshine v Bankers Trust Co. (34 NY2d 404, supra), which first raised the possibility of a distinction between establishing the fact and amount of loss and the duty or burden upon a defendant bank to come forward and adduce evidence showing nonloss.
This distinction provides the means of a judicial construe *290 tion of the statute which harmonizes the conflicts, ambiguities and apparently inconsistent purposes hereinabove referred to.
In Cicci the defendant interposed an affirmative defense of the nonexistence of any loss. The Cicci Court examined the statute and its pre-enactment history, applied the facts submitted upon the motion for summary judgment before it, and determined that a trial was required on the issue of no loss raised by the answer. In so doing, the court relied upon the commentators and secondary authorities in support of its hypothesis that unless plaintiff was required to prove something beyond the amount debited from his account, subdivision (3) of section 4-403 of the Uniform Commercial Code, relating to the "burden of establishing” by plaintiff, would be rendered meaningless. That court however did not indicate what additional proof or quantum of proof it would require of a plaintiff to prove a prima facie case, nor did it discuss whether in seeking a construction to avoid a negation of meaning as to subdivision (3) of section 4-403 of the Uniform Commercial Code it was in effect thereby rendering the premise of subdivision (1) of section 4-403 meaningless.
With the benefit of the opinion of Judge Wachtler in Sunshine (supra), I follow a different route and come to a different conclusion than that reached by the Cicci Court. I need not dwell upon the factual and procedural distinctions between Cicci and the case at bar by asserting in the instant case, unlike Cicci, we have a completed trial in which the defendant adduced no proof of any kind rather than the Cicci situation of a summary judgment motion in a case where the defendant’s pleading claims the right to prove the absence of loss as an affirmative defense.
The Court of Appeals in Sunshine clearly states that a defendant bank exercising its subrogation rights created by section 4-407 of the Uniform Commercial Code has the burden of coming forward and presenting evidence which would show an absence of actual loss sustained by a plaintiff depositor suing it for damages arising from an improper payment over a stop payment order. In so stating, the Court of Appeals has not negated plaintiff’s ultimate burden of proof upon the issue of loss if the defendant comes forward with proof. The Court of Appeals has thereby provided a means of harmoniously construing subdivision (1) of section 4-403, subdivision (3) of section 4-403 and section 4-407 of the Uniform Commercial Code to effectuate the statutory intent and design.
*291 This distinction between burden of proof and burden of coming forward is not uncommon. The immediate parallel which comes to mind is the shifting burden in a bailment case where the mechanism of proof is quite similar. To restate the principle as applied to the case at bar, if the bank fails to meet its burden with legally sufficient proof of nonloss, the customer has proven a prima facie case and is entitled to judgment. Where the burden of going forward is met by the bank, the customer must sustain the ultimate burden of proof on the issue of loss.
It should be noted parenthetically, that the holding in Sunshine radically departs from the long established common-law requirement of payment as a condition precedent to the acquisition and exercise of subrogation rights. At bar, this would have permitted defendant, notwithstanding the absence of the mechanical act of crediting plaintiffs account (payment), to assert any rights of Gallo, the payee of the check, as a subrogee pursuant to section 4-407 of the Uniform Commercial Code. Such subrogated rights could have been appropriately asserted by the bank to establish nonloss or lesser loss.
CONCLUSION AT BAR
In this case, the defendant bank chose to try its case against the plaintiff alone without asserting any affirmative defense as to nonloss, or adducing any evidence to negate the claimed loss at trial. No attempt was made to implead any other party from whom the defendant might acquire subrogated rights, to vouch any such party into the action, or to commence its own action against such party and thereafter move for a single consolidated trial. The defendant bank chose rather to maintain a position that plaintiff was required to come forward with evidence as to the underlying transaction to negate any inference of nonloss or lesser loss in order to prove plaintiffs prima facie case.
As previously stated the bank’s position in this regard is in error under the law existing before and after the enactment of the code (Chase Manhattan Bank v Battat, 297 NY 185, supra; Sunshine v Bankers Trust Co., 34 NY2d 404, supra). Therefore plaintiff has proven his prima facie case and defendant’s motion to dismiss on that ground must be denied. Plaintiff has not defeated defendant’s subrogation rights which still remain viable notwithstanding any disposition herein. The merits of any outstanding dispute arising out of the contract between *292 payee Gallo and plaintiff has not been determined in this case inasmuch as no proof has been adduced by any party on this issue. Therefore, the doctrine of collateral estoppel would not bar assertion of a future claim based thereon.
Plaintiff’s good faith act of surrendering possession of the rug to the payee after giving defendant a stop paymeñt order, and his assumption of compliance therewith by the defendant, is understandable and reasonable. Unless done without good faith, such surrender certainly may not defeat defendant’s statutory accountability under subdivision (1) of section 4-403 of the Uniform Commercial Code for failure to comply with a proper stop order. The existence of defendant’s subrogation right to stand in the shoes of the payee (Uniform Commercial Code, § 4-407, subd [b]) does not negate the obligation of the subrogee bank to come forward with some evidence in support of any such claimed right. In this case defendant chose not to do so. Defendant therefore failed to produce any evidence to negate plaintiff’s prima facie case.
Under such circumstances, there are no issues of fact to be determined regarding plaintiff’s failure to meet his burden of establishing the fact and amount of loss under subdivision (3) of section 4-403 of the Uniform Commercial Code because of the defendant’s failure to come forward with anything which contraverts plaintiff’s prima facie showing of loss.
DECISION
Accordingly, defendant’s motions are denied and plaintiff is granted judgment against the defendant in the sum of $2,500 together with interest, costs, and disbursements as demanded in the complaint.